Henry Epstein, J.
This is an action for goods sold and delivered. The sale and delivery are admitted as well as nonpayment. The answer claims actionable breach of warranty and counterclaim is set forth. Findings and conclusions were waived and this will constitute the decision in the case. This action is based on sales to defendants of a product with which defendants made furniture covers (clear, transparent vinyl plastic film). The specific orders were given to plaintiff by defendants on September 17,1957 and November 8, 1957. They were in writing, on defendants’ own order forms, signed by George S. Krasnov for defendants. Significant are the words on the first of these two orders, “ As Had ” in capital letters. The second order merely enumerated the identifying number of the product and the word “ Clear ”. Shipments of these two orders were received and defendants then manufactured some of the material into covers for furniture. There were returns from customers due to cracks attributed to inability of the manufactured product to withstand certain cold weather conditions. Plaintiff agreed to accept the return of unmanufactured (rolls) material and duly credited defendants with the value of such material. Plaintiff seeks recovery of the purchase price of the material manufactured by defendants of the agreed value of $8,641.38
No clear picture can be had of the transactions and of defendants’ position without the evidence of the prior transactions, for the same material, immediately preceding the transactions in issue. This was a plastic transparent material which plaintiff was in process of developing and acknowledging to its purchaser the difficulties being faced in its proposed use by defendants. The reason why this is essential to a just decision on the facts herein is that the present dispute involves an order or orders for the same product “ AS HAD ”. This was the purchaser’s own specification and its explanation can be readily found in the prior transactions and correspondence of the parties with respect thereto. On June 24, 1957 defendant advised plaintiff that there were difficulties being encountered with customers due to the effect of light upon the product of plaintiff’s material. Tests were to be made by the United States Testing Company {not a government agency) and the reports to be forwarded to plaintiff. Plaintiff promptly replied on June 28,1957 with suggestions as to future use, and stating explicitly:
*728 “We will, however, continue to work on the problem of endeavoring to improve your formulation although, at the present time, the material you have, is the best that we can produce.
“ Should you feel our present quality is not acceptable, kindly return whatever uncut material you have on your floor, for full credit.
“ P.S. Your acknowledgment of this letter will be appreciated
There was no such acknowledgment. On July 2,1957 the TI. S. Testing Company, Inc. reported its tests to defendants, but no such tests either sought or reported any ‘ ‘ cold test ’ ’. Thereafter and on July 16, 1957 defendants again wrote plaintiff, pointing out difficulties with the product and ending with the following prayerful words: “We hope, and are keeping our fingers crossed, that the abnormally high percentage of returns will come to an end and that future production runs on your materials will hold up better in ultra-violet light or sun light exposure
The test report was enclosed. Two days later plaintiff replied by registered mail with these significant paragraphs:
“At the present time our material is the best that we can produce. We will, of course, try to improve it and will advise you when we have done so.
“ Our laboratory is continuing to work on this problem, and we have hopes of developing a better formulation in the near future.
‘ ‘ Additional orders will be accepted by us only on the condition that we will not be held responsible for any claims on the properties covered by your letter ”.
Following the foregoing exchange of correspondence defendants placed a further order for the same material on August 8, 1957. None of these orders is involved herein, but the indisputable conclusion is forced that defendants were buying a product in stages of development and taking the risk of manufacture for defendants’ trade. When returns from the shipments in issue here were met by defendants, plaintiff did precisely what it had theretofore done — agreed to take back the unmanufactured goods and credit defendants at the agreed price. Defendants’ Exhibit C is evidence of that practice, but the words placed on the accompanying memorandum ‘ ‘ Return of defective goods ’ ’ are self-serving and said exhibit was not received as evidence of that assertion. Defendants have received full credit for this returned merchandise.
Here we find no sale of merchandise with the warranty claimed by defendants. Without such warranty defendants knew they *729 had no possible cause of action and that knowledge explains what followed. Plaintiff’s salesman was asked to obtain a statement from plaintiff’s production manager that the material sold “ passes the S.P.I. cold crack test at 0° F.” This was sought by defendants so they could satisfy their customers. No hint was given that it was to supply the missing and necessary link for a suit by defendants or an offset against plaintiff. The letter sent with that statement was some three months after the sale and acceptance of the goods sold with the defendants’ own notation that they were to be “ AS HAD ”, referring to prior transactions for the same character of merchandise. Defendants cannot be permitted thus to fortify an otherwise unsupportable claim. To do so would violate the established law prohibiting importing by parol evidence an express warranty into an already executed written contract. (Personal Property Law, § 93; Ellen v. Heacock, 247 App. Div. 476, 477; William H. Waters, Inc. v. March, 240 App. Div. 120; Bareham & McFarland, Inc. v. Kane, 228 App. Div. 396.)
There had not been any suggestion of a warranty against cold weather; there had not been any such test sought or asked. Defendants continued to manufacture covers after having received returns with the knowledge of the complaints. At no time in ordering the material had defendants asked, demanded or mentioned tests against “ cold”. At no time did plaintiff ever place on its material or in its orders any seal or sign that the material sold was in accordance with the S.P.I. standards (Society of Plastic Industries). There was no misrepresentation by plaintiff and defendants seek an unfair advantage by now attempting to impose on plaintiff a warranty wholly lacking in the transactions at issue. Afterthought and the misleading of a salesman anxious to retain a customer’s good will cannot supply an express warranty, missing when the orders were placed with a written specification referable only to prior orders for merchandise still in a process of development.
Plaintiff is entitled to judgment for $8,641.38 with interest and costs. Counterclaim dismissed. Submit judgment.